IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHARD DeBLOIS,  *
       Plaintiff,
                   *

v.                             CIVIL ACTION NO. CCB-07-2596
                   *

JASON GENSEL, et al.,
       Defendants.  *
                 ******

## MEMORANDUM

On September 17, 2007, pro se plaintiff Richard DeBlois, an inmate currently incarcerated at the Roxbury Correctional Institution in Hagerstown, Maryland, filed a civil rights complaint pursuant to 42 U.S.C. §1983 seeking money damages. Plaintiff alleges that he was subjected to excessive force when he was arrested by defendants. Pending before the court is defendants' dispositive motion (*see* Paper No. 19), which shall be treated as a motion for summary judgment.[1] No hearing is needed to resolve the pending dispositive motion. *See* Local Rule 105.6 (D. Md. 2008). For the reasons that follow the motion SHALL BE GRANTED.

## Factual and Procedural Background

By way of unverified complaint, plaintiff states that on June 7, 2007, he was walking near 7418 Old Eastern Avenue, in Baltimore County, Maryland when he observed County police officers in the area. While taking a short cut down an alley to catch a bus, plaintiff claims he was hit on the

---

[1] Plaintiff has responded to defendants' dispositive motion, Paper Nos. 24 and 27, but has failed to provide any affidavit, even his own, to support his version of events. Although a court may treat a verified complaint as an affidavit for purposes of summary judgment, plaintiff's complaint has not been verified. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Any other documents the party submits may not be considered on a motion for summary judgment unless they are authenticated by either an affidavit or deposition. *See Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993). Plaintiff claims that he did not have the opportunity to have his statement notarized, but plaintiff needed only to declare in writing that his statements were true under penalty of perjury for his writing to be considered as an affidavit for purposes of summary judgment. *See* 28 U.S.C. § 1746(2) (2008). Furthermore, plaintiff was given notice of his rights and responsibilities with regard to the motion for summary judgment filed against him in accordance with the requirements of *Roseboro v. Garrison*. *See* 528 F.2d 309, 310 (4th Cir. 1975); *see also* Paper No. 21.

1

right side of his head without warning by Officer Gensel. Plaintiff claims that he was sprayed with pepper spray and that numerous other officers responded to the scene and assaulted him.[2] Paper No. 1.

According to the verified record, on October 7, 2007, at approximately 10:00 a.m., defendant Gensel received a call regarding a suspicious person wandering and carrying a paper bag near Mars Estates Elementary School in Essex, Baltimore County, Maryland. When Gensel arrived on the scene many of the children were playing outside. Gensel was advised that the suspicious person had left the school and walked north on Route 702 toward Old Eastern Avenue. Gensel drove his police cruiser in that direction and observed plaintiff, who matched the description of the person seen at the school, walking in circles and putting his face in a brown bag. Gensel believed plaintiff might be a confused mentally or physically impaired homeless person. Gensel approached plaintiff in his car, rolled the window down, and asked plaintiff if he felt all right. Plaintiff ignored Gensel who drove a little further and again tried to speak with plaintiff. Plaintiff began to walk away from Gensel's car. Gensel stopped his car and approached plaintiff on foot, telling him to stop so Gensel could speak with him. As Gensel got closer to plaintiff, plaintiff walked faster away from Gensel. As Gensel caught up with plaintiff, he placed his hand on plaintiff's shoulder in an effort to get his attention. Plaintiff turned suddenly and swung the paper bag he was holding at Gensel's face, splashing liquid into Gensel's eyes, which began to burn. Plaintff then punched Gensel in the face. Gensel was able to call on his radio for assistance. Plaintiff moved forward in an aggressive way and Gensel pulled out his baton and struck plaintiff twice. Plaintiff did not respond to the strikes. Plaintiff then threw the brown bag, which contained paint thinner, and a large amount splashed directly in Gensel's face. Gensel could not see and his baton was knocked out of his hand. Plaintiff grabbed Gensel and

---

[2] Plaintiff named James W. Johnson and David Jagodzinki in the caption of his complaint, but has failed to

punched him a number of times, knocking him to the ground. While Gensel was on the ground he heard a citizen yell that plaintiff was grabbing for Gensel's gun. Gensel moved his hand down and felt plaintiff's hand on his gun. Gensel used his hand to block plaintiff from removing his gun. Two civilians who had come upon the scene assisted Gensel by grabbing plaintiff's arms and pulling them off the gun. Gensel was able to take out his handcuffs and handcuff one of plaintiff's arms but was unable to secure the other arm because plaintiff pulled his arm under his body. At this point officer Burton arrived on the scene and instructed Gensel to seek treatment for the chemical burns to his eyes. Paper No. 19, Declaration Gensel.

Burton avers that on June 7, 2007, at approximately 10:00 a.m., he was driving his police cruiser when he received an urgent call from Gensel requesting assistance. Burton was approximately one mile from Gensel's location and immediately responded to the scene. When he arrived at the scene he saw Gensel struggling with plaintiff. Gensel was on the ground with plaintiff, screaming that he was in pain and plaintiff had thrown something in his eyes. Burton took over for Gensel and a civilian assisted Gensel in rinsing out his eyes. Burton attempted to subdue plaintiff by getting on top of his back to handcuff him. Burton instructed plaintiff a number of times to stop resisting, that he was under arrest, and he needed to give Burton his arms. Plaintiff refused to comply with any of Burton's orders. Plaintiff laid on the ground with one arm in handcuffs and the other straight out to the side. Plaintiff resisted handcuffing and Burton struck plaintiff in the shoulder several times in an effort to bend and secure the arm. Plaintiff, however, continued to resist. After several minutes other officers arrived at the scene. Exhausted from struggling with plaintiff, Burton stepped aside to allow Officer Piccolo and others to subdue plaintiff. Burton observed that the officers were never able to properly handcuff plaintiff and he had to be carried into the police car because he was struggling and refused to walk to the car. *Id.*, Declaration Burton.

---

allege any conduct by these defendants.

3

Piccolo avers that on June 7, 2007, at approximately 10:00 a.m., he was driving in his police cruiser when he received an urgent call from Gensel requesting assistance. Piccolo was two or three miles from Gensel and responded immediately to the scene. As Piccolo arrived he observed Burton struggling with plaintiff. Burton was on top of plaintiff attempting to hold him down and yelling for plaintiff to give him his hand. Gensel was rinsing his eyes with water from a hose. Piccolo attempted to assist Burton in handcuffing plaintiff but was not able to bring plaintiff's arms together because he was resisting. Ultimately Piccolo used another set of handcuffs to restrain plaintiff's other arm and locked the two sets of handcuffs together in order to get some restraint of plaintiff. Piccolo then began to transport plaintiff to the Essex Police Station. While in transit, Piccolo observed plaintiff maneuver his hands, cuffed from behind, to the front. Plaintiff then spit at Piccolo several times and began kicking the rear doors and windows of the police car. Piccolo pulled the car over and warned plaintiff that if he did not stop spitting and kicking he would be sprayed with immobilization spray. Plaintiff continued kicking and spitting and Piccolo sprayed him. Plaintiff was then transported to the police station for processing. *Id.*, Declaration Piccolo.

As a result of the incident, plaintiff was charged in the District Court of Maryland for Baltimore County with first-degree assault on Gensel and related charges. Paper No. 19, App. 32. The case was removed to the Circuit Court for Baltimore County, Maryland, where plaintiff was found guilty of first-degree assault and sentenced to 25 years incarceration. *Id.*, Ex. 56.

## Standard of Review

A motion for summary judgment is governed by Fed. R. Civ. P. 56(c) which provides that:

> [Summary judgment] should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

4

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). Furthermore, the court may not consider "unsworn, unauthenticated documents" on a motion for summary judgment. *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993).

## Analysis

**A.      Excessive Force**

To the extent plaintiff claims that his arrest could have been effected with lesser force and therefore defendants acted outside of the Constitution, his claim fails. Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U. S. 386, 395 (1989); *Orem v. Rephann*, 523

5

F.3d 442, 445-46 (4th Cir. 2008). This requires "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (citation omitted). Factors to be included in making this determination include the severity of the crime, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee. *See Graham*, 490 U.S. at 396. The determination is to be made "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id; see also Abney v. Coe,* 493 F.3d 412, 416 (4th Cir. 2007) (holding "[Fourth Amendment] reasonableness is evaluated from the perspective of the officer on the scene, not through the more leisurely lens of hindsight.") Further, "[t]he right to make an arrest carries with it the right to use the amount of force that a reasonable officer would think necessary to take the person being arrested into custody." *See Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988). "The Constitution simply does not require police to gamble with their lives in the face of a serious threat of harm." *Elliott v. Leavitt*, 99 F.3d 640, 641 (4th Cir. 1996). Moreover, the use of force in preventing the escape of a dangerous suspect is constitutional. *Garner*, 471 U.S. at 11.

The declarations supplied by defendants and supported by the physical evidence recovered during the investigation of the crime demonstrate that Gensel was responding to a call regarding a suspicious person near a school. Gensel responded to the area and saw plaintiff, who fit the description of the suspicious person and who was acting in a confused manner. Gensel approached plaintiff who refused to speak with him, walked away, and then threw paint thinner in Gensel's face and punched him. Gensel was justified in his efforts to stop plaintiff to speak with him and was justified in his efforts to subdue plaintiff and effectuate his arrest after plaintiff assaulted him.

Once other officers arrived on the scene and plaintiff was pushed to the ground he still refused to submit to being handcuffed by keeping his arm under his body and/or extended to his side,

6

rather than placing it on his back as directed.  To the extent plaintiff contends that his arrest was unlawful and he was therefore permitted to resist the arrest, citizens do not have a constitutional right to resist an arrest, even an unlawful one. *See Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 921 (9th Cir. 2001) ("absence of probable cause does not grant an individual the right to offer resistance"); *Kilheffer v. Plowfield*, 409 F. Supp. 677, 680 (E.D. Pa. 1976).  Likewise, plaintiff continued to be combative during his transport to the police station, spitting, kicking, and seeking to overcome his restraints.  Plaintiff was warned that if his conduct continued he would be sprayed with immobilization spray.  Plaintiff did not comply with the directions of the arresting officer, and he was sprayed. Considering the totality of the circumstances, the court cannot say that it was unreasonable for defendants, in the exigency of the situation, to forcibly restrain plaintiff and to employ immobilization spray in doing so.  The force used by defendants was the amount necessary to restrain plaintiff, who was actively resisting his arrest and assaulting defendants.

Even if plaintiff's claim that he was simply taking a short cut to a bus stop were believed, defendant's conduct was still reasonable.  Gensel reasonably believed that plaintiff was the person acting suspiciously around the school and observed him acting in a confused manner, possibly in need of assistance.  *See Elliott*, 99 F. 3d at 644 ("officers need not be absolutely sure....of the nature of the threat or the suspect's intent to cause them harm–the Constitution does not require that certitude precede the act of self protection").  Gensel simply asked to speak with plaintiff.  Plaintiff then assaulted Gensel.  The events that followed involving each of the officers were undertaken both in self defense and in protection of the public.  Defendants acted reasonably in light of the information available to them at the time. *See Graham*, 490 U.S. at 396.

**B.     Qualified Immunity**

Defendants claim that even if their actions were unconstitutional they are entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are

shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U. S. 800, 818 (1982) (internal quotation marks omitted). "In determining whether a government official is entitled to qualified immunity, '[courts] must (1) identify the right allegedly violated, (2) determine whether the constitutional right violated was clearly established at the time of the incident, and (3) evaluate whether a reasonable offic[ial] would have understood that the conduct at issue violated the clearly established right.'" *Henderson v. Simms*, 223 F.3d 267, 271 (4th Cir. 2000) (quoting *S. P. v. City of Takoma Park*, 134 F.3d 260, 265 (4th Cir. 1998)); *see also Vathekan v. Prince George's County*, 154 F.3d 173, 179 (4th Cir. 1998).

Plaintiff claims that his right to be free from excessive force was violated. In determining whether the right claimed to be violated is clearly established "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 635 (1987). "[A]lthough the exact conduct at issue need not have been held to be unlawful in order for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest." *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998) *aff'd*, 526 U.S. 603 (1999). "If there exists a 'legitimate question' as to whether particular conduct violates a particular right then the right is not clearly established and qualified immunity applies." *Korb v. Lehman,* 919 F.2d 243, 247 (4th Cir. 1990). "The 'meaning' of the Fourth Amendment, at least when stated in broad philosophical terms, is relatively clear. The precise action or combination of actions, however, which will infringe a particular suspect's fourth amendment rights is often difficult for even the

constitutional scholar to discern because the legal doctrine has developed and continues to develop incrementally." *Tarantino v Baker*, 825 F.2d 772, 775 (4th Cir. 1987) (holding even when court concludes that police officer violated constitutional right, officer remains shielded from civil liability unless right was clearly established.)

The third prong of the qualified immunity analysis, reasonableness, is an objective standard. *See Anderson*, 483 at 639. The proper inquiry is whether a reasonable officer could have believed the application of force was lawful. *Id.* at 641. Under the facts of this case as stated *supra*, the court finds that a reasonable officer could have believed that plaintiff was in need of assistance and/or was the suspicious person observed at the elementary school and as such there was sufficient information to stop plaintiff. After Gensel placed his hand on plaintiff's shoulder, plaintiff punched Gensel and threw paint thinner in Gensel's face. All of the actions that followed involved defendants' efforts to subdue plaintiff and effectuate his arrest for assaulting Gensel. Each of defendants' actions were reasonable under the circumstances. Defendants' actions were within the range of reasonableness expected of a police officer, and they are thus entitled to qualified immunity.

### 3. Conclusion

For the reasons stated above, defendants' motion for summary judgment shall be granted. A separate order follows.

　August 26, 2009　　　　　　　　　　　　　　　　／s／　　　　　　　　　　　　　
Date　　　　　　　　　　　　　　　　　　　　Catherine C. Blake
　　　　　　　　　　　　　　　　　　　　　　United States District Judge